## RADFORD *v.* RADFORD.

1. ANNULMENT OF MARRIAGE—SEPARATE MAINTENANCE—EVIDENCE
—SUFFICIENCY.

In proceedings by a wife for separate maintenance, where defendant filed a cross-bill for annulment of the marriage, claiming coercion and threats, the finding of the court below that defendant was the father of plaintiff's child, and that he entered into the marriage contract to relieve himself from the consequences of his intercourse with plaintiff while under the age of consent, *held*, supported by the record.

2. MARRIAGE—INFANTS—AGE OF CONSENT—CONSENT OF PARENTS
—MARRIAGE PERFORMED BY PROBATE JUDGE.

Where a female has reached the age of 16 years, the written consent of her parents or guardian is unnecessary to validate her marriage by the probate judge under 3 Comp. Laws 1915, § 11387, since under 3 Comp. Laws 1915, § 11362, she is capable of contracting marriage.

3. ANNULMENT OF MARRIAGE—CROSS-EXAMINATION—DISCRETION OF
COURT.

Where plaintiff had admitted, on cross-examination, that before meeting with defendant she had been intimate with

On validity of marriage of persons of nonage, see notes in 22 L. R. A. (N. S.) 1202; L. R. A. 1916C, 740.

other young men, the rejection of questions leading up to the solicitation of the act of intercourse in question, as not material, was well within the discretion of the trial court.

4. SAME.

Where plaintiff's father admitted, on cross-examination, that he wanted defendant to marry her, the rejection of the question as to whether he had made up his mind that if defendant did not do the right thing he would be prosecuted, *held*, not error, since witness' state of mind, not communicated to defendant, could not be said to have in any way influenced his action in marrying her.

5. HUSBAND AND WIFE—SEPARATE MAINTENANCE—MODIFICATION OF DECREE.

It appearing to the court, on appeal, that defendant husband who is without property, profession, or trade, will have difficulty in paying plaintiff $10 per week for the support of herself and child, as provided in the decree below, the same is modified, in the interest of plaintiff, so that no further proceedings will be necessary to secure its payment, to $6 per week, with the provision for the payment of an additional $4 per week in liquidation of the amount of weekly payments now due and the attorney fees and costs allowed plaintiff in both courts.

Appeal from Ingham; Wiest (Howard), J. Submitted April 27, 1921. (Docket No. 64.) Decided June 6, 1921.

Bill by Ella Radford, an infant, by her next friend, against Carlton Radford for separate maintenance. Defendant filed a cross-bill for the annulment of the marriage. From a decree for plaintiff, defendant appeals. Modified and affirmed.

*Carl H. McLean* (*Cummins & Nichols*, of counsel), for plaintiff.

*L. B. Gardner* and *Roy M. Chrouch*, for defendant.

SHARPE, J. The plaintiff and defendant were mar-

ried by the judge of probate of Ingham county on November 13, 1919, the plaintiff then being 16 years of age and the defendant 20. The marriage was consummated under the provisions of Act No. 180, Public Acts of 1897 (3 Comp. Laws 1915, §§ 11387-11391). After the marriage the plaintiff returned to the home of her parents, with whom she has since resided. A child was born to her on February 17, 1920, and is now living. On defendant's refusal to live with plaintiff or contribute to the support of herself or said child, plaintiff filed the bill of complaint herein for separate maintenance.

The defendant in his answer denies that the marriage performed was a lawful one, denies that he is the father of the plaintiff's child, admits his refusal to support her or the child, avers that he is without money or property, and by way of cross-bill alleges that the statutory requirements preceding such marriage were not complied with and the parties not legally married; that he was induced to participate in such ceremony—

"through wicked deception, false and untrue assertions and under a threat that he could and would, if he did not marry the girl, be imprisoned in the State prison at Jackson for twenty years."

In the prayer thereof he asks that the so-called marriage be declared void and he released therefrom.

The proofs were taken in open court. A decree was entered dismissing the cross-bill and ordering defendant to pay plaintiff, for the separate maintenance of herself and their child, $10 per week, beginning on September 13, 1920, and continuing until said child reaches the age of 16 years, and an additional sum of $50 as attorney's fees, payable in weekly installments of $10 each, besides the taxable court costs. From this decree the defendant has appealed.

Many reasons are assigned for the reversal of the decree. The questions raised are all fully considered and discussed in the opinion of the circuit judge, which is made a part of the record. With the conclusions reached by him we agree. His finding that the defendant is the father of plaintiff's child is, we think, fully supported by the proof, as is also his conclusion that the defendant did not enter into the marriage contract through force or fear, but to relieve himself from the unfortunate condition in which he found himself placed, owing to the plaintiff at the time of her conception being under the age of 16 years. The legal questions presented by defendant will be considered.

1. It appears that no written consent of the parent or guardian was filed with the probate judge before the issue of the license by him. The plaintiff was then 16 years of age. The statute (§ 11387) authorizes such marriages when the parties are under marriageable age if the application for the license be accompanied—

"by the written request of the parents of both parties, if living, and their guardian or guardians if either or both of the parents are dead   *   *   *   when, according to his judgment, such marriage would be a benefit to public morals."

Section 11362, 3 Comp. Laws 1915, provides:

"Every male who shall have attained the full age of eighteen years, and every female who shall have attained the full age of sixteen years, shall be capable in law of contracting marriage, if otherwise competent."

The marriageable age of a female is fixed in this section at 16 years. No request of the parent need accompany the application if she has reached that age. In *People* v. *Schoonmaker,* 119 Mich. 242, where the

validity of a marriage performed under section 11387 was involved, the court said:

"The witness Maude Breen was, at the time of the ceremony, under the age of 16 years, and incapable of making a full contract of marriage, under sections 6209 and 6210, 2 How. Stat. (3 Comp. Laws 1915, §§ 11362, 11363)."

We think the marriage performed fully complied with the requirements of the statute.

2. Plaintiff admitted on cross-examination that she had, before meeting with defendant, been intimate with a number of other young men. She was examined at length as to what occurred before they reached the car in which the act took place. She was then asked:

"*Q.* Now, can't you tell what was said?
"*The Court:* I don't think it is material to go into the solicitations leading up to it."

When asked if there was anything on the bottom of the car, the court, on objection of plaintiff's counsel, said: "I don't care about the details." This limitation of the cross-examination was, we think, well within the discretion of the trial court.

Plaintiff's father, under cross-examination, admitted that, when at the police station, he wanted the defendant to marry her. He was asked:

"*Q.* You had made up your mind that if he did not do the right thing he would be prosecuted?"

An objection to this question was sustained. We fail to see how the state of mind of this witness, not communicated to the defendant, can be said to have in any way influenced his action.

We have read the record and briefs with much care. The plaintiff is not free from blame. But the defendant was many years older, and we cannot but find

that his own conduct is responsible for the unfortunate predicament in which he is now placed.

The decree in its entirety is before us for review on this appeal. We are impressed that the weekly allowance fixed therein is likely to be beyond the ability of the defendant to pay. He has no property, no profession or trade, and nothing from which to make payment except the proceeds of his daily earnings. We apprehend that he will have difficulty in earning $10 per week over and above his necessary living expenses. It is in the interest of plaintiff that the amount fixed should be such that no further proceeding will be necessary to secure its payment. We have therefore concluded to reduce the amount of such weekly payments to $6 per week. This reduction will apply to all weekly payments now due under the decree. Defendant will, however, be required to make payment of an additional $4 per week in liquidation of the amount of the weekly payments so due and the attorney fees and costs allowed plaintiff in the decree rendered and in this decree. The decree will be modified accordingly and, as thus modified, it is affirmed, with costs to plaintiff.

STEERE, C. J., and FELLOWS, STONE, CLARK, and BIRD, JJ., concurred. MOORE and WIEST, JJ., did not sit.